1  **GREENBERG TRAURIG, LLP**
   KATHLEEN E. FINNERTY (SBN 157638)
2  RAY A. SARDO (SBN 245421)
   1201 K Street, Suite 1100
3  Sacramento, California  95814-3938
   Telephone: (916) 442-1111
4  Facsimile: (916) 448-1709
   Email:  finnertyk@gtlaw.com; sardor@gtlaw.com
5

6  Attorneys for Plaintiff
   NATIONAL BANK OF ARIZONA.
7

8

9                 **UNITED STATES DISTRICT COURT**

10               **EASTERN DISTRICT OF CALIFORNIA**

11

12  NATIONAL BANK OF ARIZONA, a        CASE NO.  08-02998-GEB-GGH
    national banking association,
13
                    Plaintiff,
14
                                       **FIRST AMENDED VERIFIED**
15  vs.                                **COMPLAINT FOR (I) APPOINTMENT**
                                       **OF RECEIVER;  (II) BREACH OF LOAN**
16  KOBRA ASSOCIATES, INC., a          **DOCUMENTS; and (III) BREACH OF**
    California Corporation; FOOD       **GUARANTY**
17  SERVICE MANAGEMENT,
    INCORPORATED, a California
18  corporation; SIERRA VALLEY
    RESTAURANTS, INC., a California
19  Corporation; ABOLGHASSEM
    ALIZADEH, a married man dealing
20  with his sole and separate property;
    KOBRA ALIZADEH, an unmarried
21  woman; AUSTIN F. WALLESTAD, an
    unmarried man; and UNKNOWN
22  JUNIOR LIEN HOLDERS AS DOES 1-
    50, INCLUSIVE,
23
                    Defendants.
24

25

26       Plaintiff National Bank of Arizona, a national banking association ("NBA" or

27  "Plaintiff"), for its First Amended Verified Complaint against Defendants Kobra Associates,

28  Inc., a California corporation ("Kobra Associates"); Food Service Management, Incorporated, a

California corporation ("Food Service"); Sierra Valley Restaurants, Inc., a California Corporation; Abolghassem Alizadeh, a married man dealing with his sole and separate property; Kobra Alizadeh, an unmarried woman; and Austin F. Wallestad, an unmarried man (collectively, the "Defendants"), alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff National Bank of Arizona ("NBA" or "Plaintiff") is a national banking association organized under the laws of the United States and authorized to do and doing business in Pima County, Arizona.

2. Plaintiff is informed and believes, and on that basis alleges, that Kobra Associates is a California corporation authorized to do and doing business in California.

3. Plaintiff is informed and believes, and on that basis alleges, that Food Service Management is a California corporation authorized to do and doing business in California.

4. Plaintiff is informed and believes, and on that basis alleges, that Sierra Valley Restaurants, Inc., is a California Corporation authorized to do and doing business in California. Plaintiff is informed and believes, and on that basis alleges, that Sierra Valley Restaurants, Inc., is the alter ego of defendants Abolghassem Alizadeh and Kobra Alizadeh.

5. Plaintiff is informed and believes, and on that basis alleges, that Defendant Abolghassem Alizadeh was at all times relevant to this action married but acting for and on behalf of himself and dealing only with his sole and separate property.

6. Plaintiff is informed and believes, and on that basis alleges, that Defendant Kobra Alizadeh is now, and at all times relevant to this action has been, an unmarried woman acting for and on behalf of herself.

7. Plaintiff is informed and believes, and on that basis alleges, that Defendant Austin F. Wallestad is now, and at all times relevant to this action has been, an unmarried man acting for and on behalf of himself.

8. The true names and capacities, whether individual, corporate or otherwise of defendants Does 1-50, inclusive, are unknown to NBA at this time. Therefore, NBA is

informed and believes, and thereon alleges, that defendants Does 1-50, inclusive, claim some right, title or interest in and to the personal property which is the subject matter of this action, which interests are subsequent, subject and junior to NBA's first priority, properly perfected liens as hereafter alleged.

9.    NBA will seek leave of Court to amend this Complaint to show the true names and identities of such defendants Does 1-50, inclusive, when such names and capacities are ascertained, if and as necessary and appropriate.

10.   The acts and events giving rise to Plaintiff's claim are based primarily upon the breach of documents that were executed by defendants within the jurisdictional boundaries of this Court. A substantial part of the acts and events that constitute the breaches occurred within the jurisdictional boundaries of this Court. Plaintiff is informed and believes and on that basis alleges that Defendants reside within the jurisdictional boundaries of this Court, and that the personal property over which Plaintiff seeks to enforce its rights are resident within this jurisdiction.

11.   This Court has original jurisdiction pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds $75,000, and the parties are citizens of different states. On information and belief, defendants Abolghassem Alizadeh, Kobra Alizadeh, and Austin Wallestad are citizens of California. On information and belief, defendants Kobra Associates, Inc.; Food Service Management, Inc.; and Sierra Valley Restaurants, Inc. are incorporated in California and have their principal place of business in California. Plaintiff is a federally chartered bank with its main office in Arizona, and is therefore a citizen of Arizona. (See 28 U.S.C. § 1348.)

12.   Venue is proper pursuant to 28 U.S.C. § 1391(a) because: (a) on information and belief, all defendants reside in California, and defendants Abolghassem Alizadeh, Kobra Alizadeh, and Austin Wallestad reside in the Eastern District of California; (b) on information and belief, defendants Kobra Associates, Inc.; Food Service Management, Inc.; and Sierra Valley Restaurants, Inc. have their principal places of business in the Eastern District of California and are subject to personal jurisdiction in the Eastern District of California; (c) a substantial part of the events or omissions on which Plaintiff's claims are based occurred in the

Eastern District of California; and (d) a substantial part of the property that is the subject of the action is located in the Eastern District of California.

## THE LOAN TRANSACTIONS

### The Loan Agreements

13.   On or about August 30, 2005, Kobra Associates, as debtor, and NBA, as lender, entered into that certain Business Loan Agreement, a true and correct copy of which is attached hereto as Exhibit A and incorporated herein by reference (as amended, modified or supplemented, the "2005 Kobra Loan Agreement") providing for a loan to Kobra Associates ("2005 Kobra Loan"), commonly referred to as "Loan No. 9002," evidenced by the issuance by Kobra Associates to NBA of that certain Promissory Note in the original principal amount of $7,950,000.00, dated August 30, 2005, a true and correct copy of which is attached hereto as Exhibit B and incorporated herein by this reference ("2005 Kobra Note").

14.   On or about August 17, 2006, Kobra Associates, as debtor, and NBA, as lender, entered into that certain Business Loan Agreement a true and correct copy of which is attached hereto as Exhibit C and incorporated herein by reference (as amended, modified or supplemented, the "2006 Kobra Loan Agreement", collectively with the 2005 Kobra Loan Agreement, the "Kobra Loan Agreements") providing for a loan to Kobra Associates ("2006 Kobra Loan", collectively with the 2005 Kobra Loan, the "Kobra Loans"), commonly referred to as "Loan No. 9003," evidenced by the issuance by Kobra Associates to NBA of that certain Promissory Note in the original principal amount of $9,347,000.00, a true and correct copy of which is attached hereto as Exhibit D and incorporated herein by this reference ("2006 Kobra Note", collectively with the 2005 Kobra Note, the "Kobra Notes").

15.   On or about June 20, 2006, Abolghassem Alizadeh and Austin F. Wallestad, collectively, as debtor, and NBA, as lender, entered into that certain Business Loan Agreement a true and correct copy of which is attached hereto as Exhibit E and incorporated herein by reference (as amended, modified or supplemented, the "Alizadeh/Wallestad Loan Agreement") providing for a loan to Abolghassem Alizadeh and Austin F. Wallestad ("Alizadeh/Wallestad Loan"), commonly referred to as "Loan No. 9001,"  evidenced by the issuance by Abolghassem

1  Alizadeh and Austin F. Wallestad, jointly and severally, to NBA of that certain Promissory Note
2  in the original principal amount of $3,200,000.00, a true and correct copy of which is attached
3  hereto as Exhibit F and incorporated herein by this reference ("Alizadeh/Wallestad Note").

4          16.     The Kobra Notes are secured by:

5          (i)     That certain Commercial Security Agreement dated as of November 19, 2004 by
6  and among Food Service, as grantor, Kobra Associates, as borrower, and NBA, as lender, which
7  granted to NBA a security interest in Equipment and Inventory located at the listed locations
8  and personal property as more fully described therein, including but not limited to the debtors'
9  Franchise Agreements, a true and correct copy of which is attached hereto as Exhibit G and
10  incorporated herein by this reference;

11         (ii)    That certain Commercial Security Agreement dated as of August 30, 2005 by and
12  among Kobra Associates, as grantor, and NBA, as lender, which granted to NBA a security
13  interest in Equipment and Inventory located at the listed locations and personal property as more
14  fully described therein, including but not limited to the debtors' Franchise Agreements, a true
15  and correct copy of which is attached hereto as Exhibit H and incorporated herein by this
16  reference;

17         (iii)   That certain Commercial Security Agreement dated as of August 17, 2006 by and
18  among Austin F. Wallestad and Abolghassem Alizadeh, as grantors, Kobra Associates, as
19  borrower, and NBA, as lender, which granted to NBA a security interest in Equipment and
20  Inventory located at the listed locations and personal property as more fully described therein, ,
21  including but not limited to the debtors' Franchise Agreements, a true and correct copy of which
22  is attached hereto as Exhibit I and incorporated herein by this reference;

23         (iv)    That certain Commercial Security Agreement dated as of August 17, 2006 by and
24  among Kobra Associates, as grantor, and NBA, as lender, which granted to NBA a security
25  interest in Equipment and Inventory located at the listed locations and personal property as more
26  fully described therein, including but not limited to the debtors' Franchise Agreements, a true
27  and correct copy of which is attached hereto as Exhibit J and incorporated herein by this
28  reference;

(v)     That certain Commercial Security Agreement dated as of August 17, 2006 by and among Food Service, as grantor, Kobra Associates, as borrower, and NBA, as lender, which granted to NBA a security interest in Equipment and Inventory located at the listed locations and personal property as more fully described therein, including but not limited to the debtors' Franchise Agreements, a true and correct copy of which is attached hereto as Exhibit K and incorporated herein by this reference.

The commercial security agreements securing the Kobra Notes, as amended, modified, or supplemented (designated as Exhibits G through K in this Verified Complaint), are hereinafter collectively referred to as the "Kobra Security Agreements". The Equipment, Inventory, and personal property, including but not limited to the debtors' Franchise Agreements, in which a security interest was granted by the Kobra Security Agreements is collectively referred to herein as the "Kobra Collateral."

17.     The Alizadeh/Wallestad Note is secured by:

(i)     That certain Commercial Security Agreement dated as of June 20, 2006 by and among Austin F. Wallestad and Abolghassem Alizadeh, as grantors, and NBA, as lender, which granted to NBA a security interest in Equipment and Inventory located at the listed locations and personal property, including but not limited to the debtors' Franchise Agreements, as more fully described therein, a true and correct copy of which is attached hereto as Exhibit L and incorporated herein by this reference;

(ii)     That certain Commercial Security Agreement dated as of June 20, 2006 by and among Kobra Associates, as grantor, Austin F. Wallestad and Abolghassem Alizadeh, as borrower, and NBA, as lender, which granted to NBA a security interest in Equipment and Inventory located at the listed locations and personal property, including but not limited to the debtors' Franchise Agreements, as more fully described therein, a true and correct copy of which is attached hereto as Exhibit M and incorporated herein by this reference;

(iii)     That certain Commercial Security Agreement dated as of June 20, 2006 by and among Food Service, as grantor, Austin F. Wallestad and Abolghassem Alizadeh, as borrower, and NBA, as lender, which granted to NBA a security interest in Equipment and Inventory

located at the listed locations and personal property, including but not limited to the debtors' Franchise Agreements, as more fully described therein, a true and correct copy of which is attached hereto as Exhibit N and incorporated herein by this reference.

The commercial security agreements securing the Alizadeh/Wallestad note, as amended, modified, or supplemented (designated as Exhibits L through N in this Verified Complaint) are hereinafter collectively referred to as the "Alizadeh/Wallestad Security Agreements".

The Equipment, Inventory, and personal property, including but not limited to the debtors' Franchise Agreements, in which a security interest was granted by the Alizadeh/Wallestad Security Agreements is collectively referred to herein as the "Alizadeh/Wallestad Collateral" (collectively with the Kobra Collateral, the "Collateral").

18. NBA perfected its security interest in and to the Collateral by filing with the California Secretary of State's office

(i) That certain UCC-1 Financing Statement on September 23, 2005, at file no. 05-7043048394, a true and correct copy of which is attached hereto as Exhibit O and incorporated herein by this reference;

(ii) That certain UCC-1 Financing Statement on September 7, 2006, at file no. 06-7084284079, a true and correct copy of which is attached hereto as Exhibit P and incorporated herein by this reference;

(iii) That certain UCC-1 Financing Statement on December 13, 2004, at file no. 04-7008928402, a true and correct copy of which is attached hereto as Exhibit Q and incorporated herein by this reference;

(iv) That certain UCC-1 Financing Statement on July 17, 2006, at file no. 06-7078450209, a true and correct copy of which is attached hereto as Exhibit R and incorporated herein by this reference

The aforementioned UCC-1 financing statements are hereinafter collectively referred to as the "Financing Statements".

19. On or about August 17, 2006, Food Service executed that certain Commercial Guaranty in favor of NBA agreeing, among other things, to absolutely and unconditionally

1   guarantee payment of Guarantor's Share, as defined in the Commercial Guaranty, of all
2   outstanding sums due under the Kobra Notes (as amended, modified or supplemented, the
3   "Food Service Guaranty"), a true and correct copy of which is attached hereto as Exhibit S and
4   incorporated herein by this reference.  Among other things, the Food Service Guaranty provides
5   that Food Service's guaranty is one of payment and not of collection.

6       20.   On or about August 17, 2006, Abolghassem Alizadeh executed that certain
7   Commercial Guaranty in favor of NBA agreeing, among other things, to absolutely and
8   unconditionally guarantee payment of Guarantor's Share, as defined in the Commercial
9   Guaranty, of all outstanding sums due under the Kobra Notes (as amended, modified or
10  supplemented, the "Abolghassem Guaranty"), a true and correct copy of which is attached
11  hereto as Exhibit T and incorporated herein by this reference.  Among other things, the
12  Abolghassem Guaranty provides that it is a guaranty of payment and not of collection.

13      21.   On or about August 17, 2006, Kobra Alizadeh (collectively with Food Service and
14  Abolghassem Alizadeh, "Guarantors") executed that certain Commercial Guaranty in favor of
15  NBA agreeing, among other things, to absolutely and unconditionally guarantee payment of
16  Guarantor's Share, as defined in the Commercial Guaranty, of all outstanding sums due under
17  the Kobra Notes (as amended, modified or supplemented, the "Kobra Alizadeh Guaranty,"
18  collectively with the Food Service Guaranty and Abolghassem Guaranty, the "Kobra
19  Guaranties"), a true and correct copy of which is attached hereto as Exhibit U and incorporated
20  herein by this reference.  Among other things, the Kobra Alizadeh Guaranty provides that it is a
21  guaranty of payment and not of collection.

22      22.   NBA also required Abolghassem Alizadeh's spouse, Shari Kranig, to execute (i)
23  that certain Acknowledgement/Disclaimer of Spouse's Sole and Separate Property executed
24  November 17, 2004; (ii) that certain Acknowledgement/Disclaimer of Spouse's Sole and
25  Separate Property executed August 30, 2005; (iii) that certain Acknowledgement/Disclaimer of
26  Spouse's Sole and Separate Property executed August 4, 2006 (collectively, the "Spousal
27  Disclaimer"), in which Shari Kranig stated her understanding that the list of property attached to
28  the Spousal Disclaimer was the sole and separate property of Abolghassem Alizadeh's and

disclaimed and released any interest she may have had in said property. A true and correct copy of the Spousal Disclaimer, including the attached list of Abolghassem Alizadeh's separate property, is attached hereto as Exhibit V and incorporated herein by reference.

23.    Collectively, without limitation, the Kobra Loan Agreement, Kobra Notes, Kobra Security Agreements, Kobra Guaranties, Spousal Disclaimer, and Financing Statements are sometime referred to hereinafter as the "Kobra Loan Documents."

24.    Collectively, without limitation, the Alizadeh/Wallestad Loan Agreement, Alizadeh/Wallestad Note, Alizadeh/Wallestad Security Agreements, Spousal Disclaimer, and Financing Statements are sometime referred to hereinafter as the "Alizadeh/Wallestad Loan Documents."

### Default Under Kobra Loan Agreements

25.    On October 23, 2008, NBA declared an Event of Default under the Kobra Loan Agreements pursuant to the letters attached hereto as Exhibit W (the "Kobra Default Letters") and incorporated herein by this reference. The Kobra Default Letters indicate that, as a result of the default, NBA had instituted the Default Rate designated in the Kobra Loan Documents.

26.    As stated in the Kobra Default Letters, Kobra Associates failed to make required payments of principal and interest due under the Kobra Notes.

27.    In the Kobra Default Letters, NBA made demand upon Kobra Associates to pay on or before October 30, 2008 all outstanding amounts due and owing under the Kobra Notes. The defaults declared were not cured, and Kobra Associates remains in default of its obligations under the Kobra Loan Agreement.

28.    On November 7, 2008, NBA sent a Notice of Intent to Exercise Remedies letter to Kobra (the "Kobra Notice of Intent to Exercise Remedies Letters"), the borrower under the Kobra Notes, for each of the Kobra Notes. The Kobra Notice of Intent to Exercise Remedies Letters, which are attached hereto as Exhibit X and incorporated by reference, informed Kobra that NBA intended to exercise its remedies, including, but not limited to, "the right to file an action against Borrower to collect all amounts due and owing under the Loan Documents and to

1 | seek appointment of a receiver." NBA has elected to declare the entire principal balance and all
2 | accrued and unpaid interests under the Kobra Notes to be immediately due and payable.

3 |     29.    NBA also delivered a copy of the Kobra Default Letters and Kobra Notice of
4 | Intent to Exercise Remedies Letters to the Guarantors and to the Franchisor under the secured
5 | Franchise Agreements.

6 |     30.    No payment has been made by Kobra Associates or the Guarantors and the
7 | outstanding indebtedness under the Kobra Loans remains due and owing.

8 | **Default Under Alizadeh/Wallestad Loan Agreement**

9 |     31.    On October 23, 2008, NBA declared an Event of Default under the
10 | Alizadeh/Wallestad Loan Agreement pursuant to the letter attached hereto as Exhibit Y (the
11 | "Alizadeh/Wallestad Default Letter") and incorporated herein by this reference. The
12 | Alizadeh/Wallestad Default Letter indicates that, as a result of the default, NBA had instituted
13 | the Default Rate designated in the Alizadeh/Wallestad Loan Documents.

14 |     32.    As stated in the Alizadeh/Wallestad Default Letter, Abolghassem Alizadeh and
15 | Austin F. Wallestad failed to make required payments of principal and interest due under the
16 | Alizadeh/Wallestad Note.

17 |     33.    In the Alizadeh/Wallestad Default Letter, NBA made demand upon Abolghassem
18 | Alizadeh and Austin F. Wallestad to pay on or before October 30, 2008 all outstanding amounts
19 | due and owing under the Alizadeh/Wallestad Note. The defaults declared were not cured, and
20 | Abolghassem Alizadeh and Austin F. Wallestad remain in default of their obligations under the
21 | Alizadeh/Wallestad Loan Agreement.

22 |     34.    On November 7, 2008, NBA sent a Notice of Intent to Exercise Remedies to
23 | Abolghassem Alizadeh and Austin F. Wallestad (the "Alizadeh/Wallestad Intent to Exercise
24 | Remedies Letter"), the borrowers under the Alizadeh/Wallestad Note. The Notice, which is
25 | attached hereto as Exhibit Z and incorporated by reference, informed Abolghassem Alizadeh
26 | and Austin F. Wallestad that NBA intended to exercise its remedies, including, but not limited
27 | to, "the right to file an action against Borrower to collect all amounts due and owing under the
28 | Loan Documents and to seek appointment of a receiver." NBA has elected to declare the entire

principal balance and all accrued and unpaid interests under the Alizadeh/Wallestad Note to be immediately due and payable.  Notice of such default(s) and election was also provided to the Franchisor under the secured Franchise Agreements.

35.     No payment has been made by Abolghassem Alizadeh and Austin F. Wallestad and the outstanding indebtedness under the Alizadeh/Wallestad Loan remains due and owing.

## Other Default Events

36.     The Alizadeh/Wallestad Loan Agreement and each of the Kobra Loan Agreements affirmatively obligated the Borrowers to, *inter alia*:

a)     Maintain its books and records including its records concerning the Collateral at the business address identified in the Loan Agreement;

b)     Promptly inform Lender in writing of all material adverse changes in Borrower's financial condition;

c)     Promptly inform Lender in writing of all existing and threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor

d)     Permit Lender to examine and audit Borrower's books and records at all reasonable times;

e)     Furnish  Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request;

f)     Furnish such additional information and statements as Lender may request from time to time;

g)     Use all loan proceeds solely for Borrower's business operations, unless specifically consented to the contrary by Lender in writing;

h)     Pay and discharge when due all of its indebtedness and obligations, including without limitation, all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed on Borrower or its properties, income, or profits, prior to the

1  date on which penalties would attach, and all lawful claims that if unpaid, might become a lien

2  or charge upon any of Borrower's properties, income or profits;

3  i)  Permit employees or agents of Lender at any reasonable time to inspect any

4  and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit

5  Borrower's books, accounts and records and to make copies and memoranda of Borrower's

6  books, accounts and records, whether in possession of Borrower or a third party;

7  j)  Maintain on an unconsolidated basis a minimum debt coverage ratio of at

8  least 1.20:1.0;

9  k)  Maintain on an unconsolidated basis a maximum ratio of term debt (not

10  subordinated) to EBITDA ratio of at least 5.50:1.0 beginning with fiscal year end 2006; and

11  l)  Provide to lender annual corporate and personal financial statements, tax

12  returns and related documents.

13  37.  Plaintiff is informed and believes and thereon alleges that Defendants have

14  breached the Alizadeh/Wallestad Loan Agreement and Kobra Loan Agreements as follows,

15  *inter alia*:

16  a)  Defendants moved their principal place of business without notifying

17  Plaintiff.  Plaintiff recently discovered that the business address identified in the Loan

18  Documents as the business address (2251 Douglas Blvd., Suite 120, Roseville, CA) is

19  completely vacant.

20  b)  There have been material adverse changes in Borrower's financial

21  condition, and Borrowers have failed to notify Plaintiff of such;

22  c)  Existing and threatened litigation, claims, investigations, administrative

23  proceedings or similar actions affecting Borrower or any Guarantor exist which could materially

24  affect the financial condition of Borrower or the financial condition of any Guarantor, and

25  Borrowers have failed to notify Plaintiff of such.

26  d)  Despite repeated requests, Defendants have failed and refused, and

27  continue to fail and refuse, to permit Plaintiff to examine and audit Defendants' books and

28  records at all reasonable times;

e)      Despite repeated requests, Defendants have failed and refused, and continue to fail and refuse, to furnish  Plaintiff with such financial statements and other related information at such frequencies and in such detail as Plaintiff has reasonably requested;

f)      Despite repeated requests, Defendants have failed and refused, and continue to fail and refuse, to furnish such additional information and statements as Plaintiff has requested;

g)      Defendants have failed to use all loan proceeds solely for Borrower's business operations, and no consent to the contrary has been given by Plaintiff in writing;

h)      Defendants have failed to pay and discharge when due all of its indebtedness and obligations, including without limitation, all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed on Borrower or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that if unpaid, might become a lien or charge upon any of Borrower's properties, income or profits;

i)      Despite repeated requests, Defendants have failed to permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit Borrower's books, accounts and records and to make copies and memoranda of Borrower's books, accounts and records, whether in possession of Borrower or a third party;

j)      Defendants have failed to maintain on an unconsolidated basis a minimum debt coverage ratio of at least 1.20:1.0, with respect to the Kobra Loan Agreements;

k)      Because Defendants have failed and refused, and continue to fail and refuse, to furnish Plaintiff with its balance sheets at such frequencies and in such detail as Plaintiff has reasonably requested, Plaintiff is unable to determine whether Defendants have maintained on an unconsolidated basis, a maximum ratio of term debt (not subordinated) to EBITDA ratio of at least 5.50:1.0 beginning with fiscal year end 2006; and

l)      Despite repeated requests, Defendants have failed to provide to lender annual corporate and personal financial statements, tax returns and related documents.

38.     Plaintiff is informed and believes, and on that basis alleges, that defendants Kobra Associates, Abolghassem Alizadeh, and Austin Wallestad made an unauthorized transfer of property, which is part of the Collateral, to Sierra Valley Restaurants, Inc., sometime after August 11, 2006.  Sierra Valley Restaurants therefore possesses an unauthorized ownership interest in the Collateral.

39.     Defendants have failed and continue to fail to cure any and all outstanding defaults under the Kobra Loan Documents and Alizadeh/Wallestad Loan Documents.

40.     Plaintiff is informed and believes, and on that basis alleges, since their default, Defendants have and continue to use Collateral for purposes other than making the payments required under the Kobra Loan Documents and Alizadeh/Wallestad Loan Documents.

41.     Plaintiff is informed and believes, and on this basis alleges, that Defendants are using funds for purposes other than debt service and the ongoing operation of the business.

42.     As of December 3, 2008, the pay-off balance on the 2005 Kobra Loan totaled $6,471,762.77, which comprises $6,047,657.91 of principal and $424,104.86 of accrued and accruing interest and late fees.  Interest continues to accrue at a per diem rate of $3,023.82.

43.     As of December 3, 2008, the pay-off balance on the 2006 Kobra Loan totaled $8,697,903,14, which comprises $8,079,794.56 of principal and $618,108.58 of accrued and accruing interest and late fees.  Interest continues to accrue at a per diem rate of $4,039.89.

44.     As of December 3, 2008, the pay-off balance on the Alizadeh/Wallestad Loan totaled $2,917,763.50, which comprises $2,729,780.85 of principal and $187,982.65 of accrued and accruing interest and late fees.  Interest continues to accrue at a per diem rate of $1,364.89.

## FIRST CLAIM FOR RELIEF

(Appointment Of Receiver)

Against all Defendants

45.     NBA realleges and incorporates herein by reference each and every preceding allegation of this Complaint as though fully set forth herein.

46.     Kobra Associates defaulted under the Kobra Loan Documents as described more fully in the preceding paragraphs of this Complaint.

47.     Abolghassem Alizadeh and Austin F. Wallestad defaulted under the Alizadeh/Wallestad Loan Documents as described more fully in the preceding paragraphs of the Complaint.

48.     Pursuant to the Kobra Security Agreements and Alizadeh/Wallestad Security Agreements, upon Defendants' default NBA is entitled to the appointment of a receiver to take possession of the Collateral securing the Kobra Notes and Alizadeh/Wallestad Note.

49.     NBA is in need of a local representative to ensure the integrity of its Collateral and to ensure that its Collateral is not transferred, damaged, devalued, stolen or otherwise altered in derogation of NBA's interests.

50.     Plaintiff is informed and believes, and on that basis alleges, since their default, Defendants have and continue to use Collateral for purposes other than making the payments required under the Kobra Loan Documents and Alizadeh/Wallestad Loan Documents.

51.     In particular, Plaintiff is informed and believes, and on this basis alleges, that Defendants are using funds for purposes other than debt service and the ongoing operation of the business.

52.     Unless a receiver is appointed, Collateral may continue to be misused and NBA's Collateral may be significantly damaged, devalued, or stolen, thereby depriving NBA of a substantial part of the security provided for in the Kobra Loan Documents and Alizadeh/Wallestad Loan Documents.

53.     Unless granted the relief as prayed for herein, NBA may be unable to collect upon its Collateral and will suffer irreparable injury from the diminution in the value of its Collateral. No other adequate remedy is given by law for the protection and preservation of NBA's Collateral or the rights of the Parties therein.

54.     As a result of Defendants' defaults under the Kobra Loan Documents and Alizadeh/Wallestad Loan Documents, NBA has retained counsel to enforce its rights under the Kobra Loan Documents and Alizadeh/Wallestad Loan Documents.  Pursuant to its rights under the Kobra Loan Documents and Alizadeh/Wallestad Loan Documents, NBA will seek payment

from the Defendants for the amount of fees and costs incurred by NBA in enforcing its rights under the Kobra Loan Documents and Alizadeh/Wallestad Loan Documents.

WHEREFORE, NBA prays for relief as follows:

a.     For an order appointing a receiver and allowing the receiver, after taking possession of the Collateral, to perform such duties as set forth in the order appointing a receiver;

b.     For an order to exclude Defendants, and each of them, or anyone claiming under or through Defendants who does not have valid rights in NBA's Collateral or any portion thereof, from taking possession of the Collateral;

c.     For costs and attorneys' fees pursuant to the Kobra Loan Documents, the Alizadeh/Wallestad Loan Documents, and California Code of Civil Procedure section 1033.5.; and

d.     For such other and further relief as the Court may deem just and appropriate.

## SECOND CLAIM FOR RELIEF

(Breach of Kobra Loan Documents)

Against defendants Kobra Associates, Abolghassem Alizadeh, Kobra Alizadeh, Food Service Management, and Austin Wallestad

55.     NBA realleges and incorporates herein by reference each and every preceding allegation of this Complaint as though fully set forth herein.

56.     Defendants defaulted under the Kobra Loan Documents as described more fully in the preceding paragraphs of this Complaint.

57.     Pursuant to the Kobra Loan Documents, as of December 3, 2008, Kobra Associates was indebted to NBA in an amount no less than $14,579,290.83, including principal, accrued and accruing interest, late fees, default interest, and attorneys' fees and costs.

58.     By engaging in the conduct and activities described above, Defendants have materially breached the Kobra Loan Documents and damaged NBA.

59.     NBA is entitled to immediate payment of no less than $14,579,290.83.  Although payment has been demanded, Defendants have failed and refused to pay the indebtedness.

60.     Pursuant to the Kobra Loan Documents and California Code of Civil Procedure section 1033.5, NBA is entitled to payment of its reasonable attorneys' fees and costs.

WHEREFORE, NBA prays for entry of judgment against Kobra Associates as follows:

a.     For all amounts due under the Kobra Loan Documents by Kobra Associates in an amount no less than $14,579,290.83, including principal, accrued and accruing interest, pre-and post-judgment interest and fees, late fees, default interest, and attorneys' fees and costs,

b.     For costs and attorneys' fees pursuant to the Kobra Loan Documents and California Code of Civil Procedure section 1033.5;

c.     For pre-judgment interest and fees from the date when due under the Kobra Loan Documents calculated in accordance with the Kobra Loan Documents;

d.     For post-judgment interest and fees on the foregoing at the default rate specified in the Kobra Loan Documents from the date of judgment until paid in full; and

e.     For such other and further relief as the Court may deem just and appropriate, including, but not limited to, post-judgment attorneys' fees and costs.

### THIRD CLAIM FOR RELIEF

(Breach of Alizadeh/Wallestad Loan Documents)

Against defendants Kobra Associates, Abolghassem Alizadeh, Kobra Alizadeh, Food Service Management, and Austin Wallestad

61.     NBA realleges and incorporates herein by reference each and every preceding allegation of the Complaint as though fully set forth herein.

62.     Defendants Abolghassem Alizadeh and Austin F. Wallestad defaulted under the Alizadeh/Wallestad Loan Documents as described more fully in the preceding paragraphs of the Complaint.

63.     Pursuant to the Alizadeh/Wallestad Loan Documents, as of December 3, 2008, Abolghassem Alizadeh and Austin F. Wallestad were indebted to NBA in an amount no less than $2,931,630.26, including principal, accrued and accruing interest, late fees, default interest, and attorneys' fees and costs.

64.     By engaging in the conduct and activities described above, Defendants Abolghassem Alizadeh and Austin F. Wallestad have materially breached the Alizadeh/Wallestad Loan Documents and damaged NBA.

65.     NBA is entitled to immediate payment of no less than $2,931,630.26.  Although payment has been demanded, Defendants Abolghassem Alizadeh and Austin F. Wallestad have failed and refused to pay the indebtedness.

66.     Pursuant to the Alizadeh/Wallestad Loan Documents and California Code of Civil Procedure section 1033.5, NBA is entitled to payment of its reasonable attorneys' fees and costs.

WHEREFORE, NBA prays for entry of judgment against Abolghassem Alizadeh and Austin F. Wallestad as follows:

a.      For all amounts due under the Alizadeh/Wallestad Loan Documents by Abolghassem Alizadeh and Austin F. Wallestad in an amount no less than $2,931,630.26, including principal, accrued and accruing interest, pre-and post-judgment interest and fees, late fees, default interest, and attorneys' fees and costs,

b.      For costs and attorneys' fees pursuant to the Alizadeh/Wallestad Loan Documents and California Code of Civil Procedure section 1033.5.

c.      For pre-judgment interest and fees from the date when due under the Alizadeh/Wallestad Loan Documents calculated in accordance with the Alizadeh/Wallestad Loan Documents;

d.      For post-judgment interest and fees on the foregoing at the default rate specified in the Alizadeh/Wallestad Loan Documents from the date of judgment until paid in full; and

e.      For such other and further relief as the Court may deem just and appropriate, including, but not limited to, post-judgment attorneys' fees and costs.

## FOURTH CLAIM FOR RELIEF

(Breach of Guaranty)

Against defendants Kobra Associates, Abolghassem Alizadeh, Kobra Alizadeh, Food Service Management, and Austin Wallestad

1      67.    NBA realleges and incorporates herein by reference each and every preceding

2 allegation of the Complaint as though fully set forth herein.

3      68.    Pursuant to the Kobra Loan Documents, as of December 3, 2008, Kobra

4 Associates was indebted to NBA in an amount no less than $14,579,290.83, including principal,

5 accrued and accruing interest, late fees, default interest, and attorneys' fees and costs.

6      69.    NBA is entitled to immediate payment of no less than $14,579,290.83. Although

7 payment has been demanded, Kobra Associates has failed and refused to make payment in

8 accordance with the terms of the Loan Documents.

9      70.    Pursuant to the terms of the Kobra Guaranties, Guarantors absolutely and

10 unconditionally guaranteed payment of Guarantors' share of the indebtedness due under the

11 Kobra Loan Documents.

12      71.    Although Payment has been demanded, Guarantors have failed and refused to pay

13 their share of the indebtedness.

14      72.    Pursuant to the Loan Documents and California Code of Civil Procedure section

15 1033.5, NBA is entitled to payment of its reasonable attorneys' fees and costs.

16      WHEREFORE, NBA prays for entry of judgment against Guarantors, and each of them,

17 as follows:

18      a.    For all amounts due under the Kobra Loan Documents in an amount no less than

19 $14,579,290.83, including principal, accrued and accruing interest, pre-and post-judgment

20 interest and fees, late fees, default interest, and attorneys' fees and costs,

21      b.    For costs and attorneys' fees pursuant to the Kobra Loan Documents and

22 California Code of Civil Procedure section 1033.5.

23      c.    For pre-judgment interest and fees from the date when due under the Kobra Loan

24 Documents calculated in accordance with the Kobra Loan Documents;

25      d.    For post-judgment interest and fees on the foregoing at the default rate specified in

26 the Kobra Loan Documents from the date of judgment until paid in full; and

27 /////

28 /////

1    e.    For such other and further relief as the Court may deem just and appropriate,

2  including, but not limited to, post-judgment attorneys' fees and costs.

3

4  DATED:  December 16, 2008                    GREENBERG TRAURIG, LLP

5

6

7                                              By: _Ray Sardo_____
                                                   KATHLEEN E. FINNERTY
8                                                  RAY A. SARDO
                                                   Attorneys for Plaintiff
9                                                  NATIONAL BANK OF ARIZONA

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1                                <u>VERIFICATION</u>

2        I, Maryann Richardson, declare as follows:

3        I serve as Vice President for National Bank of Arizona.  I have read the

4  foregoing FIRST AMENDED VERIFIED COMPLAINT FOR (I)

5  APPOINTMENT FOR RECEIVER; (II) BREACH OF LOAN DOCUMENTS;

6  and (III) BREACH OF GUARANTY and know its contents.  The maters stated in

7  the FIRST AMENDED VERIFIED COMPLAINT FOR (I) APPOINTMENT

8  FOR RECEIVER; (II) BREACH OF LOAN DOCUMENTS; and (III) BREACH

9  OF GUARANTY are true based on my own knowledge, except as to those

10  matters stated on information and belief, and as to those matters, I believe them to

11  be true.

12        I declare under penalty of perjury under the laws of the State of California

13  that the foregoing is true and correct.

14        Executed on December/6ᵗʰ, 2008, at Phoenix, Arizona.

15

16                                        Maryann Richardson

17

18

19

20

21

22

23

24

25

26

27

28